UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21262-BLOOM/Torres

HUDSON EXCESS INSURANCE
COMPANY,

      Plaintiff,

v.

GEORGE IGNACIO PINO, *et al.*,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR LEAVE TO AMEND COMPLAINT

**THIS CAUSE** is before the Court upon Defendants Kathya Puig, Rodolfo Fernando Puig, and Katerina Puig's (collectively, the "Puig Family") Motion for Judgment on the Pleadings, ECF No. [32] ("Motion for Judgment"). Plaintiff Hudson Excess Insurance Company ("Hudson Excess") filed a Response in Opposition, ECF No. [38], to which the Puig Family filed a Reply, ECF No. [39]. In the interim, Hudson Excess filed a Motion for Leave to File a Third Amended Complaint for Declaratory Judgment, ECF No. [37] ("Motion to Amend"). The Puig Family filed a Response in Opposition, ECF No. [41], to which Hudson Excess filed a Reply, ECF No. [43]. The Court has reviewed the Motion for Judgment and Motion to Amend, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, The Puig Family's Motion for Judgment is granted, and Hudson Excess' Motion to Amend is denied.

## I.      BACKGROUND

On March 17, 2023, the Puig Family filed their complaint for damages ("Underlying Action") in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, against George Ignacio Pino, Cecilia S. Pino (the "Pinos"), and five additional defendants,[1] *Kathya Puig v. George Ignacio Pino, et al.*, Case No. 23-004898 CA (31). ECF No. [1-1]. The Underlying Action asserts nine counts of negligence against seven defendants for catastrophic injuries Katerina Puig suffered due to a collision on board a boat operated by George Pino and the subsequent negligent treatment by medical personnel. That matter remains pending in state court.

On April 1, 2023, Hudson Excess filed its Complaint before this Court, ECF No. [1], and on April 19, 2023, its First Amended Complaint, ECF No. [5]. Following leave of Court, it filed the operative Second Amended Complaint for Declaratory Judgment, seeking a declaratory judgment that "the Hudson Excess Policy does not provide coverage, and Hudson Excess has no duty to indemnify, with respect to the injuries alleged in the Tort Complaint" (Count I) and a declaration "that the Hudson Excess Policy does not impose a duty to defend Mr. or Mrs. Pino with respect to the Tort Complaint" (Count II). ECF No. [8] at 11-12. Hudson Excess alleges that its excess policy only applies to injuries caused by occurrences to which both its coverage and the coverage of the Primary Insurer, Citizens, apply. *Id.* ¶ 27. Further, "[b]ecause the Citizens Watercraft Liability Exclusion bars coverage for the Tort Plaintiff's injuries, there is likewise no coverage for such injuries under the Hudson Excess Policy." *Id.*

In their Motion for Judgment, the Puig Family contends that (1) the primary insurer, Citizens, is an indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure; (2)

---

[1] The additional defendants named in the underlying state court action are Giovanni Quintero, Brian Burt, Yusniel Collado, Ocean Reef Volunteer Fire Department, Inc., and Global Sky Aircharter, Inc. (d/b/a Trauma Star).

The Hudson Excess Policy provides that it has no duty to defend the Pinos in the Underlying Action, thus failing to present a justiciable controversy; and (3) without a final judgment in the Underlying Action, Hudson Excess lacks a ripe claim and fails to present an actual controversy as required under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See generally* ECF No. [32]. Hudson Excess responds that the Puig Family has failed to establish that they are entitled to relief under Rule 19, Citizens is not a required party, and any argument that there is no case or controversy ignores the record. *See generally* ECF No. [38].

Before filing its Response, Hudson Excess filed its Motion to Amend seeking to file a Third Amended Complaint. Hudson Excess seeks to remove its allegation that "because Citizen's Watercraft Liability Exclusion precludes coverage under Citizen's policy, there is no coverage under Hudson's policy" and to assert an alternate theory that "Hudson [Excess] has no duty to defend and indemnify based upon the language in its policy without reference to the watercraft exclusion in Citizen's policy." ECF No. [37] ¶ 8. The Puig Family responds that the plain language of Hudson Excess' policy cannot be "reframed" to satisfy the case or controversy requirement as the Excess Policy unambiguously states that "[Hudson Excess has] no duty or obligation to assume responsibility for the investigation, settlement, or defense of any claim made or suit brought against the 'Insured.'" ECF No. [41] at 4. This argument goes to why the Puig Family contends that there is no case or controversy here. Hudson Excess replies that there is a possible defense trigger in its Excess Policy, which states, "[w]hen insurance is not available to the 'Insured' under any 'primary insurance' . . . we may, at our sole discretion, assume charge of the settlement or defense of any claim . . . seeking damages to which this policy [applies]." ECF No. [43] at 2; *see also* ECF No. [8-2] at 18. Further, the Second Amended Complaint alleges that the Pinos requested a defense from Hudson Excess, and that Citizens denied coverage for the Underlying Action. As

such, the action is ripe and the proposed Third Amended Complaint, if granted leave to file, "cure[s] the issue of subject matter jurisdiction." ECF No. [43] at 2-3.

## II.   LEGAL STANDARD

### A.  Leave to Amend

District courts "have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Federal Rules of Civil Procedure direct that before trial, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be "freely given" absent a showing of "futility of amendment." 466 F.3d at 1270 (citing *Foman*, 371 U.S. at 182). When an amended complaint would still be "properly dismissed or be immediately subject to summary judgment for the defendant," a district court could determine that leave to amend the complaint is futile. *Cf. Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

### B.  Motion for Judgment on the Pleadings

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). "A motion for judgment on the pleadings admits the [non-moving party's] factual allegations and impels the district court to reach a legal conclusion based on those facts." *Gachette v. Axis Surplus Ins. Co.*, No. 19-23680-CIV, 2020 WL 2850587, at *1 (S.D. Fla.

Apr. 1, 2020) (quoting *Dozier v. Prof'l Found. for Heath Care, Inc.*, 944 F.2d 814, 816 (11th Cir. 1991)). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and [] view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Am. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 798 (11th Cir. 2011) (quoting *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995)).

### C. Failure to Join an Indispensable Party

Dismissal of an action pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, for failure to join a party under Rule 19, is a "two-step inquiry." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003); *N.H. Ins. Co. v. Cincinnati Ins. Co.*, No. 14-0099-CG-N, 2014 WL 3428911, at *2 (S.D. Ala. July 15, 2014).

"First, a court must decide whether an absent party is required in the case under Rule 19(a)." *Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, No. 10-61856-CIV, 2011 WL 7807548, at *8 (S.D. Fla. July 26, 2011) (citing *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011)). If a court determines that an absent party does satisfy the Rule 19(a) criteria, i.e., that the party is a required party, the court must order that party joined if its joinder is feasible. *See* Fed. R. Civ. P. 19(a)(2); *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 842 F. Supp. 2d 1360, 1365-66 (N.D. Ga. 2012). If the absent party is not required, the litigation continues as is. *See, e.g., Devs. Sur. & Indem. Co. v. Harding Vill., Ltd.*, No. 06-21267-CIV, 2007 WL 465519, at *2 (S.D. Fla. Feb. 9, 2007).

If the party is required and joinder is not feasible, the district court moves to the second inquiry, that is, whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 683 (S.D. Fla. 2014) (citing Fed. R. Civ. P. 19(b); and *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)).

## III.   DISCUSSION

### A.  Motion for Judgment

#### i.      Rule 19(a)

In their Motion for Judgment, the Puig Family argues that Hudson Excess failed to join Citizens, an indispensable party. Under Rule 19(a), a nonparty is a required party to be joined if feasible and if "joinder will not deprive the court of subject-matter jurisdiction," and must be joined if: (1) "in that [parties'] absence the court cannot accord complete relief among existing parties;" (2) "disposing of the action" absent that party "may impair the [nonparty's] ability to protect the interest; or (3) "leave an existing party subject to a substantial risk of incurring [] multiple or

otherwise inconsistent obligations" because of the nonparty's absence. Fed R. Civ. P. (19)(a)(1). The Puig Family alleges that "Hudson [Excess'] duty to indemnify is expressly contingent upon nonparty Citizen's duty to indemnify," making "a determination regarding Citizen's duty to indemnify" necessary to "afford complete relief to Hudson [Excess]." ECF No. [32] at 5. The Puig Family contends that they have a substantial interest in a judicial determination that is binding on both of its insurers, not only the excess insurer, Hudson Excess. Moreover, absent Citizens, the Pinos are at risk of obtaining inconsistent judgments and Citizens has a substantial interest in a determination regarding its duty to indemnify as well. *Id*.

The Puig Family relies on *Rhone-Poulenc, Inc. v. Int'l Ins. Co.,* 877 F. Supp. 1170 (N.D. Ill. 1995), which held that "Rule 19 [] does not turn on labels [but rather] the effect [] of the policy is the important issue." *Id*. at 1174. "If construction of an absent insurer's primary policy is necessary to determine [] liability—that is, [] liability may be contingent or dependent on whether an absent insurer's policy applies—the action should not proceed without the absent insurer." *Id*. The Puig Family contends that this principle supports their argument that as Citizens is a required party per Rule 19(a), complete relief cannot be afforded in its absence, favoring dismissal. ECF No. [32] at 5-8.

The Puig Family next contends that Citizens cannot be joined because it would divest this Court of subject matter jurisdiction as Citizens is a citizen of Florida for purposes of diversity jurisdiction. ECF No. [32] at 7, 12. Citizens would be required to join as co-plaintiff given the alignment of "Insurer versus Insured and Injured Party." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1314 (11th Cir. 2012) (citations omitted). If the parties' interests are the same, they "must be aligned together . . . even where the parties' interests were in opposition outside of

the issues raised in the subject action." *Id*. "A district court's failure to do so [would be reversed]." *Id*.

Moreover, the Puig Family points out that Citizens is immune from suit as it is an entity of the State of Florida. *See* Fla. Stat. 627.351(6). Further, "Citizens Property Insurance Company ('Citizens') is entitled to immunity unless the same has been waived." *Citizens Prop. Ins. Corp. v. Poe Financial Group, Inc.*, No. 8:07-cv-1078-T-JSM, 2008 WL 879041 (M.D. Fla. 2008); *see also Knap v. Citizens Prop. Ins. Corp*., No 09-22370, 2009 WL 10699967 (S.D. Fla. 2009). Were Citizens named in this action, and waive immunity, Citizens would necessarily be aligned with Hudson Excess as a co-plaintiff, divesting the Court of diversity jurisdiction. ECF No. [32] at 12. As such, joinder of Citizens is not feasible.

Hudson Excess responds that Citizens is not a required party pursuant to Rule 19(a) but agrees that if it were, "joinder of Citizens is not feasible because Citizens is an arm of [Florida]." ECF No. [38] at 6. *See* also *Seminole Tribe of Fla. v. Fla.*, 514 U.S. 44, 55 (1996) (holding that "the Eleventh Amendment prohibits [even] Congress from making the State of Florida capable of being sued in federal court.").

### ii.   Rule 19(b)

The Puig Family asserts that as Citizens is a required party, but joinder is not feasible, a Rule 19(b) analysis is therefore required to determine whether the Court can proceed with the litigation "in equity and good conscience." ECF No. [32] at 7. To do so, the following factors must be analyzed: (1) "the extent to which a judgment rendered in the person's absence might prejudice that [party]"; (2) "the extent to which any prejudice could be lessened or avoided by [] protective provisions in the judgment, shaping the relief, or other measures"; (3) "whether a judgment rendered in that [party's] absence would be adequate"; and (4) "whether the plaintiff would have

an adequate remedy if the action were dismissed for nonjoinder." *Id*. In applying those factors, the Puig Family argues that there is substantial risk of prejudice to all existing parties from inconsistent judgments should Citizens later seek a determination or litigate in a different action. *Id*. Moreover, the Court cannot shape any relief that would avoid prejudice, since a judgment without Citizens would be inadequate as it would not be binding on Citizens nor resolve Hudson Excess' duty to indemnify. Lastly, Hudson Excess has an adequate remedy if this action is dismissed for nonjoinder as it is "free to seek the same relief [] in the same venue as the Underlying Action." *Id*. at 8.

Conversely, Hudson Excess argues that a Rule 19(b) analysis "gives the Court flexibility to allow an action to go forward [] when no prejudice would result either to the party or to the absentee and effective relief can be granted." ECF No. [38] at 6; *See Barow v. OM Financial Life Ins. Co*., No. 8:11-cv-00159-T-33TBM, 2011 WL 2649987, at *2 (M.D. Fla. July 6, 2011). Further, Hudson Excess asserts that an appellate court may reverse or remand a Rule 19(b) dismissal as an abuse of discretion for "collapsing the multi-factorial Rule 19(b) inquiry into one dispositive fact" — inability to join a sovereign entity. *Gensetix, Inc. v. Board of Regents of Univ. of Tex. System*, 966 F.3d 1316, 1325 (Fed. Cir. July 24, 2020). Hudson Excess contends that *Gensetix* supports its interpretation that Rule 19(b) does not necessarily favor dismissal when joinder of a state entity is not feasible.

Hudson Excess argues that each of the four Rule 19(b) factors favor proceeding with the litigation. In *Gensetix*, the appellate court held that prejudice is greatly reduced when a required party that cannot be joined has "identical interests" to a party already in the litigation that will adequately protect the interests of the non-joined party as if they are "aligned." *Id*. at 1326. If another party can "step into [its] shoes" and protect its interests, dismissal is improper because

prejudice is mitigated when the action proceeds with its interests protected. *Id*. Hudson Excess asserts that it would "protect Citizen's interests because [it] and Citizens both contend that there is no coverage under Citizens' policy" and are aligned in this way. ECF No. [38] at 8. For those reasons, Hudson Excess argues that there is no prejudice to Citizens or the other existing parties under the first and second factors of Rule 19(b).

Further, as to the third Rule 19(b) factor, Hudson Excess posits that Citizens has already denied coverage, has not sought a declaration, and there is no evidence "that the Pinos intend to sue Citizens." *Id*. As such, an adequate judgment is expected without Citizens and with "no risk of incurring inconsistent obligations." *Id*. Finally, as to the fourth Rule 19(b) factor, Hudson Excess argues that it "would not have an adequate remedy if [the action] is dismissed" and it would be prejudiced if its right to bring suit in "the present forum" is denied. *Id*. at 9.

Hudson Excess also states that "the burden is on the party raising the defense to show that the [party that] is not joined is needed for just adjudication." *Barow*, 2011 WL 264987, at *1. Hudson Excess asserts that the Puig Family failed to meet this burden with appropriate case law as a case the Puig Family relied upon was vacated and on remand, that plaintiff's motion to dismiss for failure to join necessary and indispensable parties was denied. *Rhone-Poulenc, Inc*. v. *Int'l Ins. Co*., 1996 WL 328011, at *10 (N.D. Ill. June 11, 1996). Moreover, Hudson Excess argues that the additional cases cited are inapposite in at they reflect rulings on "follow form" policies and its insurance policy with the Pinos is a Personal Umbrella Policy, not a "follow form" policy. ECF No. [38] at 12. As such, Hudson Excess claims that it can preclude coverage "regardless of whether Citizens' policy provides coverage" rather than "if the loss is excluded under the primary policy." *Id*. Hudson Excess maintains that dismissal is improper as "there is only one underlying carrier

and neither its presence nor its absence has any impact on whether Hudson's [] standalone watercraft exclusion policy precludes coverage." *Id*. at 13.

Further, Hudson Excess does not dispute that in *Schlumberger Industries, Inc. v. National Sur. Corp.*, 36 F.3d 1274 (4th Cir. 1994), the underlying insurers were indispensable and destroyed diversity. Instead, Hudson Excess argues that different insurance policies covered different policy periods, creating potential for inconsistent judgments. ECF No. [38] at 13. Hudson Excess argues that there is no similar timeline issue here creating the potential for inconsistent judgments based on when coverage was triggered, therefore *Schlumberger* fails to support the Puig Family's Rule 19(b) dismissal argument. *Id*.

The Court agrees that a Rule 19(b) analysis favors dismissal. Citizens is a required party as Hudson Excess' operative Complaint places Citizens and its denial letter central to this dispute. ECF No. [8] at ¶¶ 22, 23, 26, and 27. While Hudson Excess contends that its policy is a stand-alone policy and therefore avoids potential risks associated with varying determinations of liability, Hudson Excess' and Citizens' watercraft exclusions are similar, creating the potential for inconsistent obligations. *Compare* ECF No. [8] ¶ 18 *with id.* ¶ 19 (providing details on the Hudson Excess Watercraft and Citizens Watercraft policy exclusions). Inconsistent obligations would be prejudicial, and furthermore, protective provisions cannot avoid that a determination on Citizens' obligations is needed. Next, a judgment without Citizens is not binding on Citizens and therefore not adequate given it is a required party central to the dispute. Finally, Rule 19(b)(4) requires consideration of an adequate remedy if the action is dismissed. If dismissed, Hudson Excess may litigate this dispute with Citizens in state court, as it has argued that the Puig Family or the Pinos may do as well. ECF No. [38] at 8.

Finally, Hudson Excess argues that the Puig Family failed to meet their burden to show that Citizens is necessary for a just adjudication due to case law cited. Hudson Excess argues that the premise the Puig Family relied upon in *Rhone*, that liability is contingent upon whether an absent insurer's policy applies, fails as that case was remanded. However, the question on appeal in *Rhone* was whether the insurance policy in question was primary or excess to determine whether a motion to dismiss for failure to join a necessary party was proper. *Rhone-Poulenc Inc. v. International Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1996). On remand, the court found that the defendant insurer was in fact primarily liable, exhaustion of other insurance policies was therefore not required, and no other insurance policy needed to be analyzed or construed to determine the coverage to the insured. *Rhone-Poulenc, Inc. v. International Ins. Co.*, No. 94 C 3303, 1996 WL 435180, at *10 (N.D. Ill Jul. 31, 1996). The motion to dismiss was denied due to the failure to show that other insurers that were absent were necessary parties under Rule 19. *Id*. The court noted that "cases where excess insurers are sued without joining [] primary insurers are distinguishable." *Id*. Here, the Court has determined that Citizens is a necessary party under Rule 19, it's policy as the primary insurer applies. As Citizens is an absent party, dismissal remains proper.

Moreover, the Puig Family's reliance on *Schlumberger* is proper and demonstrates that Citizens is necessary for a just adjudication. *Schlumberger Industries, Inc.*, 36 F.3d 1274. *Schlumberger* supports the Puig Family as it stands for the proposition that "where multiple insurers cover the insured's same liability for the same time period, all the insurers are indispensable parties to an adjudication as to coverage." *Id*. at 1286 (citation omitted). The potential distinction in *Schlumberger* asserted by Hudson Excess does not defeat the core proposition that underlying insurers are necessary and indispensable parties under Rule 19 in litigation as to coverage between an insured and its excess insurer. Rather, *Schlumberger* held that

when different insurance policies covered different policy periods that issue "presents an even *stronger* case for indispensability." *Id*. (emphasis added).

In sum, the Court finds that Rule 19 favors dismissal.

### iii.    Duty to Defend

The Puig Family argues that the Hudson Excess' duty to defend "presents no justiciable controversy." ECF No. [32] at 13. The Puig Family points out there is no dispute regarding Hudson Excess' claim that it does not have a duty to defend, as the Excess Policy is unambiguous, only requiring a "plain reading" that "[Hudson Excess has] no duty or obligation to assume responsibility for the investigation, settlement, or defense of any claim made or suit brought against the 'Insured.'" *Id*. at 13; *see also* ECF No. [8-2] at 18. The Puig Family maintains that "'the case or controversy' requirement of Article III of the United States Constitution provides that a declaratory judgment may only be issued in the case of an 'actual controversy.'" *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).

Hudson Excess responds that its Excess Policy triggers a defense obligation. Its "Defense and Settlement" provision states: "with respect to occurrences which are covered under Coverage A of this policy but which are not covered or required to be covered by the underlying insurance, the Company, if no other insurer has an obligation to do so, shall defend any suit against the insured." ECF No. [38] at 13. Hudson Excess' provision for Maintenance of Primary Insurance provides that "if 'primary insurance' is unavailable to the 'Insured' due to any reason . . . the insurance afforded by this policy shall apply in the same manner as though such 'primary policies' . . . [are] in effect, so maintained, and available." *Id*. at 14; *see also* ECF No. [8-2] at 20. Citizens denied defense coverage to the Pinos for the Underlying Action. As the Pino Family admitted to making a defense demand on Hudson Excess as per their Answer and Affirmative Defenses to the

Amended Complaint, and Hudson Excess contends that it denied this defense to the Pino Family, Hudson Excess maintains that a ripe case or controversy therefore exists satisfying jurisdiction for a declaratory judgment. *Compare* ECF [24] at ¶31 *with* ECF No. [8] at ¶31.

Hudson Excess contends that its argument the pleadings demonstrate that a case or controversy exists is supported by *American Family Life Assurance Co. v. United States Fire Co.*, 885 F.2d 826 (11th Cir. 1989), which held that a contractual provision in an excess policy obligated an excess insurer to provide a defense once the primary insurer denied coverage. *Id*. at 832. Once "the primary insurer denies coverage, the excess insurer would be obligated to defend." *Id*. (quoting Couch on Insurance 2d § 51:36, at 446). While insurance coverage is not being litigated in the Underlying Action, Hudson Excess nevertheless argues that it should not be deprived of a declaration on its duty to defend given its policy language, the denial from the underlying, primary insurer, and the Pino Family's request that it also provide a defense. ECF No. [38] at 14.

As a preliminary matter, the Second Amended Complaint concedes that Hudson Excess has no duty to defend. Thus, there is no actual controversy. Moreover, Hudson Excess' "Defense and Settlement" provision is only triggered if (1) the "occurrence [is] covered under [] this policy [and] not covered or required to be covered by the underlying insurance" and (2) when no other insurer has an obligation to defend the insured. ECF No. [38] at 13. Those provisions are at odds with Hudson Excess' arguments.

Furthermore, Hudson Excess' reliance on *American Family Life Assurance* is misplaced. There, American Insurance was sued and sought a defense and coverage from its primary and its excess insurers, both of which had policies with contractual defense clauses. *Am. Fam. Life Assurance*, 885 F.2d at 829. The primary insurer offered a defense, but denied coverage, the excess insured denied both, and so American Life hired counsel to aid in its defense. *Id*. Later, American

Life prevailed against the insurers for attorney's fees, and the insurers appealed. *Id*. On appeal, the excess insurer argued that it did not owe a duty to defend because it was the excess insurer. *Id*. at 832. The Eleventh Circuit held that "it is true that in the absence of a contractual obligation [the] excess insurance carrier was not obligated to provide a defense. . . . however, there was a provision in the contract imposing such an obligation on [the excess insurer]." *Id*. As such, *American Family* supports that an excess insurer does not have a duty to defend without express policy language creating a clear contractual obligation — a potential trigger for a duty to defend as alleged by Hudson Excess would not suffice. *See id.* at 832. Here, there is no express policy language that creates an obligation to defend, and no case or controversy related to that issue, regardless of the Pino Family's demand.

### iv.    Duty to Indemnify

The parties present arguments on whether the duty to indemnify is ripe both in the Motion for Judgment and Motion to Amend. The Puig Family contends that, absent a final judgment in the Underlying Action, Hudson Excess' duty to indemnify is not ripe, and no actual controversy exists as required under the Federal Declaratory Judgment Act. ECF No. [32] at 15-16. "[T]he duty to indemnify does not ripen until the state-court plaintiff has obtained a favorable judgment." *Dream Builders of S. Fla. Corp. v. Mid-Century Cas. Co*., No. 18-23123, 2019 WL 3821552 at *4 (S.D. Fla. Aug. 15, 2019). Dismissal is routine when an insurer seeks an unripe declaratory judgment as to pending state-court litigation. *Atain Specialty Ins. Co. v. Sanchez*, No. 8:17-cv-1600-T-23AEP, 2018 WL 1991937, at *3 (M.D. Fla. Apr. 27, 2018). "[T]he duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. Sept. 30, 2001).

Hudson Excess responds that early determinations on the duty to indemnify are encouraged. ECF No. [38] at 15. Courts have "recogniz[ed] the potential benefits of a coverage determination on the duty to indemnify before conclusion of an underlying negligence suit [] allowing for intelligent decision-making regarding settlement." *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016). Moreover, prior to any determination in the Underlying Action, Hudson Excess argues that a resolution of coverage would be useful to all parties "as they contemplate how best to proceed" which may "facilitate settlement in the underlying action." ECF No. [38] at 16.

The Court agrees with the Puig Family. Declaratory judgments as to indemnity by an insurer requires a finding of adjudicated liability. *Dream Builders* supports this principle holding that "federal courts across the country have routinely accepted [that] the duty to indemnify does not generally ripen unto the state-court plaintiff has obtained a favorable judgment against the insured in the underlying state case." 2019 WL 3821552, at *4. In *Dream Builders*, an action involving an insurance coverage dispute filed in state court, a party sought realignment for a determination of ripeness, which the court rejected. *Id*. ("the Eleventh Circuit [has] held that the duty to indemnify does not ripen until the state-court plaintiff has obtained a favorable judgment.") (citations omitted). The court in *Atain* also held that a declaratory judgment on indemnification was unripe and premature as to an underlying state court action involving injuries sustained in a car accident. 2018 WL 1991937, at *1. There, the court dismissed the insurer's requests for a declaratory judgment. *Id*. at *3. Again, the court determined that the law is clear, "[a]n insurer's duty to indemnify is not ripe for adjudication unless and until the [] insured has been held liable in the underlying action." *Id*. at 2. (citations omitted). "Because an insurer's duty to indemnify is

dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Id*. (citations omitted).

Hudson Excess' reliance on *First Mercury*'s holding that failure to consider and weigh potential benefits of a liability determination could be an abuse of discretion is misplaced. "[i]ntelligent decision-making regarding settlement" still requires joinder of Citizens as a necessary party and the Rule 19(b) analysis favors dismissal without Citizens. *Atain* also supports this argument. 2018 WL 1991937, at 3 ("[a]lthough clarification of the indemnity question might expedite a settlement, that uncertain prospect must yield to the benefits of dismissal.") (citation omitted). Further, "the possibility of facilitating settlement 'alone is not sufficient justification for addressing premature, unripe issues.'" *Id*. (citation omitted).

### B.  Motion to Amend

Hudson Excess seeks to file a Third Amended Complaint to remove its allegations in the operative Second Amended Complaint, namely that "because Citizens' Watercraft Liability Exclusion precludes coverage under Citizens' policy, there is no coverage under Hudson's policy." ECF No. [37] at 2; *see also* ECF No. [8] ¶ 27. Hudson Excess contends that its Motion to Amend is "in part, to respond to the [Puig Family's] Motion for Judgment on the Pleadings [] that Citizens is an indispensable party" and to instead "make clear that Hudson [Excess] has no duty to defend and indemnify based upon the language in its policy without reference to the watercraft exclusion in Citizens' policy." ECF No. [37] ¶¶ 7, 8. Hudson Excess' Personal Liability Provision states that it will pay up to its policy limit "for those sums in excess of the limits of liability of the 'primary insurance' that the 'Insured' becomes legally obligated to pay as damages . . . to which both this coverage and the 'primary insurance' apply." ECF No. [37-1] at 7. Further, Hudson Excess' exclusions provides that Personal Liability and Medical Payments to others do not apply if the

occurrences arising out of "watercraft . . . powered by one or more outboard motors with more than 25 total horsepower if the outboard is owned by and 'insured.'" ECF No. [37-1] at 8. Allegations in the Underlying Action include that the Pinos owned and operated the boat in the Underlying Action, which was powered by "two 300-horeseapower V6 Yamaha outboard engines." ECF No. [37-1] at 10.

Hudson Excess argues that a declaratory judgment is proper as denial of a demand to defend an insured is sufficient to satisfy the case or controversy requirement. *Allstate Prop. & Cas. Ins. Co. v. Peluchette*, 15-CV-80325, 2015 WL 11438215, at *3 (S.D. Fla. July 30, 2015) (citing *Atl. Cas. Ins. Co. v. GMC Concrete Co.*, No. CIV.A. 07-0563WSB, 2007 WL 4335499, at *5 (S.D. Ala. Dec. 7, 2007) ("[c]ourts have recognized a controversy exists regarding the duty to defend when an insured seeks a defense from an insurance company, but the insurance company denies that it is obligated"). In their Answer, the Pino Family admitted to making a demand upon Hudson Excess to defend them in the Underlying Action. *Compare* ECF No. [24] ¶31 *with* ECF No. [8] ¶31. Therefore, in its proposed Third Amended Complaint, Hudson Excess requests that this Court "declare that the Hudson Excess Policy does not provide coverage, and Hudson Excess has no duty to defend and therefore no duty to indemnify" the Pinos. ECF No. [37-1] at 11. Hudson Excess contends that the "application of [its] Watercraft Exclusion policy will not be litigated in the underlying action" thus favoring a coverage determination to allow for potential settlement prior to adjudication. ECF No. [43] at 4.

Regarding the duty to defend, the Puig Family responds that the Excess Policy "unambiguously claims that no [] duty [to defend] exists," and Hudson Excess cannot present a ripe claim as "its duty to indemnify is a hypothetical issue contingent on events that may never arise." ECF No. [41] at 2. The Puig Family rests their argument on the plain language in the Excess

Policy that Hudson Excess "has no duty, or obligation to assume responsibility for the investigation, settlement, or defense of any claim made or suit brought against the 'Insured.'" ECF No. [41] at 4. The Puig Family contends that "if there is no contractual duty to defend in the parties' contract there is no duty to defend" citing to *Allstate Ins. Co. v. RJT Enterprises, Inc.*, 692 So. 2d 142, 144 (Fla. 1997). The Puig Family argues that the new claim Hudson Excess seeks to put forth in the proposed Third Amended Complaint is not ripe and the Federal Declaratory Judgment Act requires an "actual controversy." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). Moreover, "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate." *Id*. Showing "an actual 'injury in fact' — some harm to a legal interest that is 'actual or imminent, not 'conjectural' or 'hypothetical'" is necessary. *Bowen v. First Family Fin. Servs., Inc*., 233 F. 3d 1331, 1339 (11th Cir. 2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Regarding the duty to indemnify, The Puig Family argues that such duty it is a mere "remote" possibility because the claim is dependent on a chain of events: the Underlying Action must be resolved to determine if a judgment is entered against the Pinos. If a judgment is entered, then the judgment must be deemed a covered claim under Citizens primary insurance policy, "then, and only then, can Hudson's duty to indemnify be analyzed with certainty and finality." ECF No. [41] at 6. The Puig Family cites *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331 for the proposition that to establish an Article III case or controversy, the facts alleged must demonstrate "a substantial likelihood that [a party] will suffer injury in the future." *Id*. at 1339. A remote possibility of future injury is insufficient. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999).

Hudson Excess replies that its duty to indemnify is a ripe controversy because a primary insurance policy does not need to be exhausted before an excess insurer can establish that an actual controversy exists. *Publix Super Markets, Inc., v. Fireman's Fund Ins. Co.*, No. 8:22-cv-2569-CEH-AEP, 2023 WL 6049680, at *6 (M.D. Fla. Sept. 15, 2023) (finding that "complaints that plausibly allege that the exhaustion of primary coverage is likely have been found to establish an actual controversy."). Absent a formal request for coverage, allegations establishing a high likelihood that a request for coverage might be forthcoming are sufficient to establish a controversy for purposes of a declaratory judgment and to survive a motion to dismiss. *See Houston Specialty Ins. Co., v. Titleworks of SW Fla., Inc.*, No. 2:15-cv-219-FtM-29DNF, 2015 WL 5599175, at *4 (M.D. Fla. Sept. 22, 2015). Additionally, Hudson Excess reasons that the risk of coverage is a sufficient basis for a declaratory judgment as "the 'test for sufficiency of a complaint is not whether the plaintiff will succeed in obtaining the decree he seeks . . . but whether he is entitled to a declaration of rights at all.'" *Hartford Fire Ins. Co., et al. v. Weathertrol Maint. Corp.*, No. 16-24509, 2017 WL 5643298, at *3, (S.D. Fla. Feb. 21, 2017). Hudson Excess also argues that final adjudication is not a requirement for justiciability of an insurer's duty to defend. Hudson Excess relies on *Peluchette* that a ripe controversy is found when an insured seeks a defense, but it is denied. *Peluchette*, WL 11438215, at *3.

The facts here are distinguishable from the cases upon which Hudson Excess relies. In *Peluchette*, the insurer sought a declaration that an uncontroverted, contractual duty to defend clause in its policy applied even though an insured party refused to be defended by Allstate. *Id., at* *1. While the court held that a ripe controversy exists regarding a duty to defend when an insured seeks a defense and is denied, the court also refused to establish that a "right under the policy to provide a defense [exists] <u>if</u> a duty to defend exists" as the right to defend is distinct from a duty

to defend and can only found when the contract explicitly reserves that right. *Id*. at *3. The insurer in *Peluchette* failed to "demonstrate the existence of a substantial controversy [] of immediacy to warrant a declaratory judgment regarding its duty to defend." *Id*. at *4. *Peluchette* is unavailing to Hudson Excess' argument that once an insurer denies a defense to an insured, a ripe controversy exists as there was no denial of coverage in that case and a ripe controversy was not found. Further, the court noted that clear, contractual provisions are necessary to determine whether a duty or a right exists between an insured and the insurer. *Id*. at *3-4.

Hudson Excess' reliance on *Publix* is also unavailing. In that case, Publix, the plaintiff, was a named defendant in sixty-one lawsuits related to "opioid prescription practices" in its pharmacies and had already incurred "millions" in litigation defense costs. *Publix*, 2023 WL 6049680, at *2. Publix alleged that it contacted its insurers, and each denied or was "reasonably expected to deny" defense and indemnity coverage for the opioid lawsuits. *Id*. Publix urged the court to consider communications between itself and two it its insurers to demonstrate that "a live, actual controversy" existed. *Id*. at *3. The court held that Publix's request for a declaratory judgment was "premature and unripe" despite the many lawsuits in which Publix was named as a defendant because Publix had "neither been found liable in nor settled any of the actions against it." *Id.* at *5. Furthermore, "courts in the Eleventh Circuit have broadly agreed that declaratory relief regarding an insurance company's duty to indemnify an insured in a pending lawsuit is unripe until the conclusion of the underlying litigation." *Id*. Here, the Underlying Action is still pending in state court and liability has not been determined. *Publix* makes clear that the standard to establish a ripe controversy before liability is assessed must be "high—in fact 'all but certain'" at the moment a complaint is filed. *Id*. (citing *GTE Directories Pub. Corp. V. Trimen America, Inc*., 67 F.3d 1563, 1568 (11th Cir. 1995)). The court explained that the "all but certain" threshold

was met in *GTE* when that plaintiff who already litigated with a party, sought a declaration "on its right to contact the defendant's customers" when threatened with additional lawsuits for any contact with those customers. *Id*. There, the immediate contingency based upon prior adjudication "presented a justiciable controversy" as no contingent issue was left to be addressed. *Id*. Hudson Excess' argument that because the alleged injuries are so devastating that exhaustion of the primary insurance policy is likely is therefore unavailing.

Finally, Hudson Excess' reliance on *Titleworks* is also misplaced. In *Titleworks*, the legal controversy was deemed ripe not because a request for coverage or a demand under the policies was made, but because one insurer was "currently incurring expenses in an attempt to clear title" to the property, had "a contractual and common law right to recover those expenses from [the other party,]" and had initiated a notice of claim. *Titleworks*, 2015 WL 5599175, at *4. Therefore the "practical likelihood" that the recovery would be sought was "quite high." *Id*. The facts as alleged allowed the court to conclude that "there [was] a legal conflict between [the parties] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*.

Absent the "all but certain" threshold to establish a ripe controversy, a party must wait for liability to be adjudicated before a declaration on a duty to indemnify. This Court has already held that "'[b]ecause an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim.'" *Mt. Hawley Ins. Co. v. Maitland Cntr., LLC, et al.*, No. 18-cv-80452, 2018 WL 3634579 (S.D. Fla. July 30, 2018). *See also Hartford Fire Ins. Co., et al. v. Weathertrol Maint. Corp.*, No. 16-24509-CIV, 2017 WL 5643298, at *5 (S.D. Fla. Feb. 21, 2017) ("an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit.") (citations omitted). *See also Peluchette*, 15-CV-80325,

2015 WL 11438215, at *4 (S.D. Fla. July 30, 2015) ("'[c]ase law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action.'" (citations omitted)).

The Court finds that, even considering the proposed Third Amended Complaint, Hudson Excess' request for a declaratory judgment is not ripe and cannot satisfy the actual case or controversy requirement. The pending Underlying Action involves multiple defendants, each with separate counts of negligence at issue. Many of the negligence counts relate to trauma and medical treatment that Katerina Puig received — the allegations as to the Pino Family are not the sole issues to be adjudicated and there has been no determination as to liability at this juncture.

## A.  Amendment is Futile

Hudson Excess contends that leave to amend should only be denied "when a plaintiff has engaged in undue delay, bad faith, dilatory motives, [when] the amended pleading would prejudice the defendants" or when an amended complaint cannot survive Rule 12(b)(6) scrutiny. ECF No. [37] ¶ 14. Hudson Excess maintains that its proposed Third Amended Complaint does not suffer from these deficiencies. *Id.*

The Puig Family responds that the proposed Third Amended Complaint contains the same deficiencies as the operative Second Amended Complaint, namely that Hudson Excess is seeking a declaration regarding a nonexistent duty to defend, its duty to indemnify is unripe, and Citizens is a required party that cannot be joined. ECF No. [41] at 6. Further, The Puig Family asserts that absent resolution of the Underlying Action, no amendment can cure these deficiencies. *Id.*

Hudson Excess replies that its policy contains a possible defense trigger that may create a duty to defend such that "there is a case or controversy, and that the Puig Family is wrong that the amendment is futile and fails to cure the issue of subject matter jurisdiction." ECF No. [42] at 3.

Hudson Excess relies on the language within its Policy, the DEFENSE AND SETTLEMENT provision, and its Maintenance of Primary Insurance provision as possible defense triggers. ECF Nos. [37-1] at 7, [43] at 2.

Tellingly, the provisions in the policy do not create a contractual duty to defend its insured. As in *Cf. Rivas*, when an amended complaint would still be "properly dismissed" a district court may find that leave to amend the complaint is futile. 777 F. App'x at 965. Hudson Excess argues that its Watercraft Exclusion precludes coverage for the occurrence in the Underlying Action without reference to Citizens. ECF No. [43] at 1. However, if there is a defense trigger, Hudson Excess has written its Defense and Settlement language conditionally, such that any defense would be assumed at its "sole discretion," not that there is a clear duty to defend the insured. ECF No. [37-1] at 7. As to the Maintenance provision, Hudson Excess has only alleged that Citizens denied coverage for this occurrence, not that it is unavailable. Even assuming *arguendo* that coverage under the Citizens policy is unavailable, the Maintenance provision does not trigger a new duty. Instead, Hudson Excess' Policy would remain in effect as is, with no additional duties triggered. Therefore, neither argument as to those policy provisions presents a duty to defend.

Moreover, Hudson Excess' proposed Third Amended Complaint identifies an additional "insuring agreement" in its Policy with the Pinos, "COVERAGE L," which states that its coverage is dependent on a legal determination of liability of its insured that both it and the primary insurer must cover:

> We will pay up to our Limit of Liability for those sums in excess of the limits of liability of the "primary insurance" that the "Insured" becomes legally obligated to pay as damages. . . caused by an occurrence to which both this coverage and the "primary insurance" apply.

> ECF No. [37-1] at 6-7.

Accordingly, the Court finds that any amendment is futile. The proposed Third Amended Complaint cannot change the fundamental issue that the Underlying Action remains pending, and as there is no determination as to liability, this case is not ripe and cannot meet the "case or controversy" requirement necessary to warrant a declaratory judgment. When an amended complaint would still be "properly dismissed" a district court can determine that leave to amend the complaint is futile. *Cf. Rivas*, 777 F. App'x at 965. Consequently, Hudson Excess' Motion to Amend is denied.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  The Puig Family's Motion for Judgment, **ECF No. [32]**, is **GRANTED**.

2.  Hudson Excess' Motion for Leave to File Amended Complaint, **ECF No. [37],** is **DENIED**.

3.  The Clerk of Court shall **CLOSE** this case and all deadlines are terminated.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 20, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     Counsel of Record